UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FEDERICO AND COMPANY LLC d/b/a
M&W SUPPLIERS,

                              Plaintiff,

             -against-

ZURICH GENERAL INSURANCE
MALAYSIA BERHAD,

                              Defendant.

23-CV-4411 (AS)

MEMORANDUM OPINION
AND ORDER

ARUN SUBRAMANIAN, United States District Judge:

Plaintiff Federico and Company LLC d/b/a M&W Suppliers (M&W) sued Zurich General Insurance Malaysia Berhad (Zurich) for breach of contract and declaratory judgment. Dkt. 1. Zurich moves to dismiss, claiming that the Court lacks personal jurisdiction. Dkt. 14. For the following reasons, Defendant's motion is denied.

## BACKGROUND

The Court accepts the well-pleaded allegations of the complaint as true for the purpose of this motion. The Court also considers the supporting material submitted in connection with this motion.

Zurich is an insurance company incorporated in Malaysia, with a principal place of business in Malaysia. Compl. ¶ 6. Zurich entered an open cargo insurance policy with UGC Asia Sdn Bhn (UGC), a Malaysian insurance agency. Dkts. 15 at 3, 17-3. Under the policy, UGC was permitted to accept cargo insurance applications, determine whether an application fell within the scope of the open cargo policy, and, if so, issue a certificate of insurance to the shipper. Dkts. 15 at 4, 21 at 4.

According to Zurich, "[o]n or about November 17, 2020, UCG Asia received an insurance proposal by email from CRY Respond Sdn Bhd" (CRY) seeking coverage for a shipment of nitrile gloves (the Insured Cargo) from Malaysia to the United States. Dkt. 15 at 4. UCG determined that the requests fell within Zurich's open cargo policy and issued six certificates of insurance covering thirty-two containers of Insured Cargo. *Id.* at 5. The certificates bear Zurich's name and logo and state that "ZURICH GENERAL INSURANCE MALAYSIA BERHAD has insured the undermentioned goods for the voyage(s) and values(s) stated hereon." Dkt. 17-5. UGC is not listed on the certificates. *Id.* CRY is listed as the insured party (along with an address in Malaysia) and Venkal Apparels PVT LTD is listed as a cosigner (along with an address in India). *Id.* In addition,

"W K Webster (Overseas) Ltd., as agents of W K Webster – New York" is listed as the survey agent, along with a California address. *Id.*

Each certificate also lists a "final destination." For one of the certificates (CA Certificate), the destination is CMJ Traders & Financiers Medical Supply LLC in Long Beach, California. *Id.* at 4. For the other five certificates (NY Certificates), the destination is CMJ Medical Supplies LLC, located at 607, E 11ᵗʰ Street, Apt #12A, New York, NY 10009. *Id.* at 2–3, 5–7. The parties agree that CMJ Medical Supplies LLC is not authorized or registered to do business in New York. Dkt. 15 at 12; *see also* Dkt. 25-1 at ¶ 3. Indeed, its New York address is for a residential, one-bedroom apartment. Dkt. 15 at 12. Apparently unbeknownst to Zurich, Dkt. 15 at 6, CMJ Medical Supplies LLC purchased the Insured Cargo from CRY's cosigner and then sold it to M&W, *see* Compl. ¶ 11, Dkt. 21 at 4.

The Insured Cargo did not arrive in the United States. Compl. ¶ 21. Two of the containers arrived in California containing empty boxes and trash, and the remaining thirty containers arrived empty and were seized by U.S. Customs authorities. *Id.* M&W alleges that it "promptly notified" Zurich of the loss. ¶ 22. Zurich appointed adjusters to investigate the loss but declined to indemnify M&W after a two-year investigation. ¶ 23. M&W sued for breach of contract and declaratory judgment. Zurich moves to dismiss, arguing that the Court lacks personal jurisdiction.

## LEGAL STANDARDS

"In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Eades v. Kennedy, PC L. Offs.*, 799 F.3d 161, 167–68 (2d Cir. 2015) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013)). "[I]n deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (citation omitted). The Court will "construe the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor." *Id.* at 85.

"For a federal court to exercise specific jurisdiction, there must be a statutory basis for jurisdiction and the exercise of jurisdiction must comport with constitutional due process requirements." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. UPS Supply Chain Sols., Inc.*, 74 F.4th 66, 72 (2d Cir. 2023).

## DISCUSSION

M&W concedes that the Court cannot exercise general jurisdiction over Zurich, which is domiciled in Malaysia. Instead, M&W argues that the Court has specific jurisdiction under New York Insurance Law and New York's long-arm statute. The Court finds that it has personal jurisdiction over Zurich for all claims related to the NY Certificates and that M&W has established a "genuine issue of jurisdictional fact" that makes jurisdictional discovery appropriate as to the

CA Certificate. *Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 2023 WL 2751049, at *38 (S.D.N.Y. Mar. 31, 2023).

## I.     New York Insurance Law § 1213(b)(1)(A)

Section 1213(b)(1)(A) of the New York Insurance Law permits New York courts to exercise personal jurisdiction over foreign insurers if the insurer issues "contracts of insurance to residents of this state or to corporations authorized to do business therein." N.Y. Ins. Law § 1213(b)(1)(A). In interpreting a prior, materially identical version of this law, the Second Circuit held that there was no jurisdiction over a foreign insurer who issued a policy to an unnamed "bearer" to insure goods being shipped into New York. *Ringers' Dutchocs, Inc. v. S. S. S. L. 180*, 494 F.2d 678, 679 (2d Cir. 1974). The Court held that "although the insured 'bearer' proved to be a corporation authorized to do business in New York, that fact nevertheless was not sufficient to confer jurisdiction pursuant to [the prior version of the law] because it was by no means certain, nor even likely, that the insured purchaser of the goods shipped to a New York warehouse would in fact be a corporation authorized to do business in New York." *Id.* at 679; *see also Armada Supply Inc. v. Wright*, 858 F.2d 842, (2d Cir. 1988) (finding jurisdiction based on § 1213 when "the certificate . . . was issued directly to a company authorized to do business in New York").

Here, the insurance policy was issued to CRY, a company that M&W concedes was not registered or authorized to do business in New York. *See* Dkt. 25-1 at ¶ 6. M&W also concedes that CMJ Medical Supplies LLC, the company listed as the Insured Cargo's destination, was not registered or authorized to do business in New York. *See id.* at ¶ 3. Neither *Ringers'* nor *Armada* suggests that in the absence of a contract with a New York registered company, jurisdiction may be premised on § 1213(b)(1)(A) merely because Zurich agreed to insure goods being shipped to New York. Without a basis for jurisdiction under § 1213(b)(1)(A), we turn to New York's long-arm statute.

## II.     New York's Long-Arm Statute

As relevant here, New York's long-arm statute provides that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state," as long as the cause of action "aris[es] from" those acts. N.Y. C.P.L.R. 302(a)(1) (emphasis added). "New York courts have held that a claim 'arises from' a particular transaction when there is some articulable nexus between the business transacted and the cause of action sued upon." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (cleaned up).

In *Armada*, the Second Circuit held that the district court had personal jurisdiction over a foreign insurer who issued a certificate of insurance for cargo shipped into New York. The Court reasoned that the insurer's conduct fell within CPLR 302(a)(1) for two reasons. First, the insurer contracted "anywhere to supply goods or services in the state" because "contracting to insure property located within a jurisdiction, even if the presence of that property is transitory, subjects a foreign marine-insurer to jurisdiction on suits over such insurance." 858 F.2d at 849. Second, the

insurer "transacted business" in New York because "[i]t issued an insurance certificate on property located in New York, appointed a New York firm to receive notice of the claim, engaged a New York surveyor to attend the vessel, and designated two representatives in New York to investigate and adjust the claim." *Id.* at 848.[1]

## A.  NY Certificates

The "contracts anywhere" requirement of CPLR 302(a)(1) is satisfied with respect to M&W's claims related to the NY Certificates. *Armada*'s holding is clear: "contracting to insure property located within a jurisdiction, even if the presence of that property is transitory, subjects a foreign marine-insurer to jurisdiction on suits over such insurance." 858 F.2d at 849; *see also Ins. Co. of N. Am. v. Pyramid Ins. Co. of Bermuda*, 1994 WL 88754, at *2 (S.D.N.Y. Mar. 16, 1994) ("On the authority of *Armada Supply*, I hold that by issuing in Bermuda an insurance policy with the expectation that it could be claimed upon for events occurring within New York, Pyramid 'contract[ed] anywhere to supply goods or services in the state,' thus subjecting itself to the jurisdiction of courts in New York under CPLR § 302(a)(1).") (Sotomayor, J.). For five of the six certificates at issue in the litigation, Zurich clearly contracted to insure goods that were being shipped into New York.

Zurich's motion to dismiss does not acknowledge this portion of *Armada*'s holding or the "contracts anywhere" provision of CPLR 302(a)(1). Only in its reply brief does Zurich argue that there is no "articulable nexus" between Zurich's insurance services and the claims at issue here because the Insured Cargo never arrived in New York. *See* Dkt. 23 at 1–2. But this nexus inquiry is "relatively permissive" and requires only a "substantial relationship between the transaction and the claim asserted." *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120, 129 (2d Cir. 2022) (citations omitted). Here, there is a clear and substantial relationship between a contract to insure goods being transported to New York and a breach of that same contract. In addition, other courts in this district have held that CPLR 302(a)(1)'s "contracts anywhere" provision extends to contracts to ship goods into New York, even if the goods do not ultimately arrive in New York. *See Saint Tropez Inc. v. Ningbo Maywood Indus. & Trade Co.*, 2014 WL 3512807, at *6 (S.D.N.Y. July 16, 2014) (collecting cases). As Zurich concedes, it permitted one of its agents to issue the NY Certificates, thereby insuring goods meant to arrive in New York, and then retained 85% of the premiums for the NY Certificates. Dkt 15 at 8–9. It should therefore come as no surprise that any alleged breach of the NY Certificates would be claimed upon in New York, even if the Insured Cargo was lost prior to its arrival in New York.

---

[1] Section 1213(b)(1)(D) of the New York Insurance Law further permits New York courts to exercise personal jurisdiction over foreign insurers based on "any other transaction of business." N.Y. Ins. Law § 1213(b)(1)(D). The Second Circuit has interpreted this phrase under the same standard as the "transacts any business" standard of CPLR 302(a)(1). *See Armada*, 858 F.2d at 848. So the Court will not separately evaluate the parties' arguments in connection with § 1213(b)(1)(D).

The Court thus finds a statutory basis to exercise personal jurisdiction over claims related to the NY Certificates. And since the Court is simply applying the holding of *Armada*, the Court also finds that exercising personal jurisdiction complies with due process. *See Armada*, 858 F.2d at 849 ("[N]o constitutional barriers existed to the district court's exercise of personal jurisdiction over [the foreign insurer] on these facts."); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 463–64 (1985) (upholding Florida long arm statute that permitted courts to exercise jurisdiction over "[a]ny person, whether or not a citizen or resident" of Florida who "[b]reach[es] a contract in this state by failing to perform acts required by the contract to be performed in this state," so long as the cause of action arises from the alleged contractual breach).

### B.  CA Certificate

Whether the Court has personal jurisdiction over Zurich with respect to the claims related to the CA Certificate presents a closer question. The CA Certificate was a contract to insure goods in California and thus clearly falls outside of CPLR 302(a)(1)'s "contracts anywhere" standard. It may, however, fall within CPLR 302(a)(1)'s "transacts any business" standard.

"A nondomiciliary 'transacts business' under CPLR 302(a)(1) when he purposefully avails himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws." *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986) (cleaned up). "No single event or contact connecting defendant to the forum state need be demonstrated; rather, the totality of all defendant's contacts with the forum state must indicate that the exercise of jurisdiction would be proper." *Id.* There is no allegation that Zurich ever directly transacted business in New York, but the Court may also consider the actions of a person's agent. "In determining whether an agency exists under § 302, courts have focused on the realities of the relationship in question rather than the formalities of agency law." *Id.* at 366. "To be considered an agent under section 302, the alleged agent must have acted 'for the benefit of and with the knowledge and consent' of the non-resident principal and the non-resident principal must have 'exercised some control over' the alleged agent." *Edwardo v. Roman Cath. Bishop of Providence*, 66 F.4th 69, 74 (2d Cir. 2023) (quoting *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988)).

M&W argues that Zurich transacted business in New York through its agent, W K Webster. According to M&W, Zurich engaged W K Webster, a business authorized and registered to do business in New York and with offices in New York, "to not only survey the Insured Cargo prior to insuring it, but also to investigate and adjust the loss of the Insured Cargo." Dkt. 21 at 2. M&W also claims, both in a supplemental letter and at the September 27, 2023 hearing before the Court, that W K Webster's New York branch served an underwriting function for the insurance contracts at issue. *See* Dkt. 25 at 1. Just as in *Armada*, there would likely be a prima facie showing of jurisdiction in New York if Zurich's New York agent underwrote the insurance contracts, investigated the insurance claims, and played a role in denying M&W's coverage claim. *See* 858 F.2d at 848 (holding that the foreign insurer "transacted business" within the meaning of CPLR 302(a)(1), in part, because it "appointed a New York firm to receive notice of the claim, engaged

a New York surveyor to attend the vessel, and designated two representatives in New York to investigate and adjust the claim").[2]

But M&W did not include any reference to W K Webster in its complaint. Nor do the affidavits submitted in connection with this motion fully substantiate M&W's claim about W K Webster's role or its agency relationship to Zurich. Further, M&W does not provide any direct evidence of an agency relationship between Zurich and W K Webster, such as a contract between the parties or correspondence related to this coverage dispute. Instead, M&W attaches emails between W K Webster's New York claims employees and CMJ Medical Supplies LLC discussing the insurance claim for the Insured Cargo. *See* Dkt. 21-13. The Court is also mindful that Zurich disputes M&W's characterization of W K Webster's role. Zurich claimed at the September 27, 2023 hearing that W K Webster does not perform any underwriting functions for Zurich. Zurich also argues that W K Webster's California and London offices were the ones responsible for adjusting claims related to these contracts. *See* Dkt. 23 at 3. And Zurich claims that "W K Webster had limited authority from Zurich Malaysia and could not settle claims or make coverage determinations on behalf of Zurich Malaysia." *Id.*

With this in mind, the Court finds it necessary to authorize jurisdictional discovery. "Whether to allow jurisdictional discovery is 'a decision as to which a district court enjoys substantial discretion.'" *Bayshore*, 2023 WL 2751049, at *38 (quoting *Keren Chasanim Corp. v. Vill. of Kiryas Joel*, 2008 WL 11518871, at *5 (S.D.N.Y. Nov. 10, 2008)). "[I]f a plaintiff has identified a genuine issue of jurisdictional fact, discovery is appropriate even in the absence of a prima facie showing as to jurisdiction." *Reed Int'l, Inc. v. Afghanistan Int'l Bank*, 2023 WL 2138600, at *4 (S.D.N.Y. Feb. 21, 2023). Here, there is a critical issue of jurisdictional fact—whether Zurich's agent conducted substantial activities in New York directly related to the CA Certificate—that cannot be fully decided on the pleadings or evidence submitted in connection with Zurich's motion. M&W is therefore entitled to jurisdictional discovery regarding W K Webster's role related to the CA Certificate.[3]

Whether exercising personal jurisdiction over Zurich with respect to the CA Certificate comports with due process depends on the extent to which Zurich transacts business in New York. The Court therefore defers the due-process analysis until after jurisdictional discovery.

---

[2] Zurich claims that M&W "has not alleged or offered evidence that their claim arises from the business activity of W K Webster in New York." Dkt. 23 at 4. But the dispute at issue is based on Zurich's denial of M&W's insurance claim. *See* Compl. ¶¶ 26–38. If those coverage decisions were made by Zurich's New York agent in New York, then there is likely the necessary "articulable nexus" between the business transactions in New York and the claim at issue. *McGowan v. Smith*, 52 N.Y.2d 268, 272 (1981).

[3] M&W also claims Zurich was paid premiums from New York. Dkt. 21 at 3. But Zurich's briefing suggests that Zurich collected premiums from UCG in Malaysia, who in turn received premiums from CRY in Malaysia. Dkt. 16 at 4–5. M&W may explore this issue in jurisdictional discovery, though it is not currently clear whether premiums would have any jurisdictional significance.

## CONCLUSION

For the foregoing reasons, Zurich's motion is denied with respect to the NY Certificates and denied without prejudice with respect to the CA Certificate.

As discussed above, the parties are directed to conduct jurisdictional discovery. No later than October 16, 2023, M&W may serve no more than 10 document requests and no more than 10 interrogatories on Zurich related to this jurisdictional discovery. Zurich must respond to these requests with responsive documents on or before November 24, 2023. The parties should meet and confer concerning any objections to M&W's requests within 10 days of service and promptly bring any disputes to the Court. M&W will have until December 4, 2023, to file an amended complaint that includes additional allegations and attaches other evidence sufficient to establish that the Court may exercise specific personal jurisdiction over Zurich with respect to the CA Certificate. Zurich may then renew its motion to dismiss as to the CA Certificate.

The rest of discovery is not stayed. The parties should continue with discovery in a manner consistent with the February 27, 2024 discovery deadline. Dkt. 26.

The Clerk of Court is directed to terminate ECF No. 15.

SO ORDERED.

Dated: October 10, 2023
New York, New York

_____
ARUN SUBRAMANIAN
United States District Judge