UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERICO AND COMPANY LLC d/b/a M&W SUPPLIERS,<br><br>                    Plaintiff,<br><br>-against-<br><br>ZURICH GENERAL INSURANCE MALAYSIA BERHAD,<br><br>                    Defendant. | 23-cv-4411 (AS)<br><br>OPINION AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

Plaintiff Federico and Company LLC d/b/a M&W Suppliers (M&W) moves to strike two of the affirmative defenses in Defendant Zurich General Insurance Malaysia Berhad's (Zurich) amended answer. For the following reasons, M&W's motion is denied.

## BACKGROUND

On January 9, 2024, Zurich filed its answer to M&W's complaint. The answer included twenty-two affirmative defenses. As relevant here, affirmative defense seven stated:

> The claims asserted in the Complaint are precluded and/or barred, in whole or in part, because coverage under the Policy is void ab initio as a result of the Named Insured CRY Respond Sdn Bhd's fraudulent acts, material misrepresentations and/or omissions.

Dkt. 44 at 7. Affirmative defense twenty-one stated:

> Coverage under the Policies is void from inception due to an insured's material misrepresentations and/or failure to disclose and/or concealment of material facts from Zurich Malaysia prior to inception of the Policies.

*Id.* at 9. M&W moved to strike these two affirmative defenses. Dkt. 47.

Shortly after, the parties jointly wrote to the Court, stating that M&W consented to Zurich's amending its answer to replead the two defenses. Dkt. 51. On February 16, 2024, Zurich filed its amended answer. Dkt. 53. Affirmative defenses seven and twenty-one were amended to add (in addition to what is stated above) the following information:

> Upon information and belief, CMJ Medical Supplies LLC ("CMJ") and Venkal Apparels Pvt Ltd ("Venkal") have claimed in police reports to the Malaysian and Indian authorities that CRY fraudulently induced CMJ and Venkal to enter into a sales and purchase agreement for the sale of nitrile gloves by falsely stating that it could supply CMJ with nitrile gloves that it did not intend to supply and did not supply. Zurich Malaysia further understands that CMJ alleges that it transferred, through its consignor, Venkal, funds representing the agreed-upon

purchase price to CRY based on CRY's fraudulent representations. Thereafter, CMJ alleges that CRY pretended to source the subject gloves and arrange for their shipment in 27 containers from Malaysia to the United States.

As part of its fraudulent scheme, CRY represented to UCG Asia Sdn Bhd ("UCG Asia") that it was seeking insurance for six (6) shipments of nitrile gloves, which, upon information and belief, it did not intend to supply to CMJ. Specifically, CRY sought insurance coverage for the shipments of Nitrile gloves from Malaysia to their port of destination in the United States and the benefit of insurance for the goods in the event they were, *inter alia*, lost or damaged during transit despite never having an intent to ship the goods. UCG Asia subsequently issued 6 Certificates of Insurance to CRY based on CRY's fraudulent misrepresentations that it was seeking to obtain insurance in connection with legal commercial activities. Each Certificate of Insurance was issued to CRY, as named insured, for a shipment of nitrile examination gloves from Port Klang, Malaysia, to the United States with a listed destination of either New York, New York, or Long Beach, California. Plaintiff is seeking coverage for the subject shipments under the Certificates of Insurance, which were allegedly obtained through an assignment of the "insurance rights" from CMJ. CMJ allegedly received these "insurance rights" from CRY in connection with the purchase of the subject gloves, as CRY allegedly purchased the Certificates of Insurance from UCG Asia on behalf of CMJ, listing itself as the "Insured" and CMJ as the "Final Destination."

Accordingly, the claims asserted in the Complaint are precluded and/or barred, in whole or in part, because coverage under the Policy is void ab initio as a result of CRY's fraudulent acts, material misrepresentations and/or omissions as the named insured.

*Id.* at 7–12. M&W again moved to strike. Dkt. 57.

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(f), the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike affirmative defenses under Rule 12(f) are disfavored, and the standard for a plaintiff to prevail is demanding." *Trs. of N.Y.C. Dist. Council v. M.C.F. Assocs., Inc.*, 530 F. Supp. 3d 460, 463–64 (S.D.N.Y. 2021).

In assessing a motion to strike, the Court generally applies "the plausibility standard of *Twombly* … to determining the sufficiency of all pleadings, including the pleading of an affirmative defense." *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 98 (2d Cir. 2019). "[A]pplying the plausibility standard to any pleading is a context-specific task." *Id.* (internal quotation marks omitted). "The key aspect of the context relevant to the standard for pleading an affirmative defense is that an affirmative defense, rather than a complaint, is at issue." *Id.* This context is "relevant to the degree of rigor appropriate for testing the pleading of an affirmative defense," since the plaintiff had "the entire time of the relevant statute of limitations to gather facts necessary to satisfy" its pleading obligations, while the defendant did not. *Id.*

"While other affirmative defenses need only meet the notice requirements of Rule 8(c), 'affirmative defenses alleging fraud must meet the heightened pleading requirements of Rule 9(b).'" *Bud Forrest Ent., Inc. v. Turnaround Artists, Inc.*, 2018 WL 11323520, at *4 (S.D.N.Y. Jan. 10, 2018) (quoting *De Sesto v. Slaine*, 171 F. Supp. 3d 194, 205 (S.D.N.Y. 2016)). Aside from determining whether the allegations meet Rule 9(b)'s particularity requirement, the Court must also consider whether the defense "is a legally insufficient basis for precluding a plaintiff from prevailing on its claims" and weigh any prejudice to the other party. *GEOMC*, 918 F.3d at 98.

## DISCUSSION

M&W's motion to strike is denied because the Court holds that the two affirmative defenses are adequately pleaded.

M&W argues that Zurich's affirmative defenses do not meet Rule 9(b)'s heightened pleading standards because Zurich does not "bother to specify what CRY actually did, said, did not do, or did not say, to Zurich or its agent UCG Asia during the underwriting process so as to justify rescission." Dkt. 57 at 10. M&W also argues that Zurich does not identify "actual facts" concerning the fraud, such as whether any misrepresentations were communicated orally or in writing or who they were made by. *Id*. at 11, 13 (emphasis omitted). And Zurich's affirmative defenses are pleaded "upon information and belief." *Id.* at 12.

Contrary to M&W's arguments, Zurich's affirmative defenses are alleged with particularity as required under Rule 9(b). As Zurich points out, the affirmative defenses incorporate and reference facts from documents already produced in discovery: police reports and an investigation report. Dkt. 59 at 1. Zurich attaches these documents to its opposition. *See* Dkt. 60-1 to -11. The affirmative defenses and the underlying documents adequately describe "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Among other things, Zurich alleges the misrepresentations (CRY falsely claimed it would supply the insured cargo when it never intended to do so) and points to the individuals who concealed facts or made these misrepresentations (CRY's agents, including Jamal bin Omar and Krishna a/l Seloa Raju). Dkt. 59 at 8. Reviewed in this context, the Court is persuaded that the level of detail included in Zurich's amended answer provides M&W sufficient notice of the nature and substance of Zurich's affirmative defenses as required under Rule 9(b). *See Felton v. Walston & Co*., 508 F.2d 577, 581 (2d Cir. 1974) ("One of the main purposes of [Rule 9(b)] is to apprise a defendant of the claim against him and of the acts relied upon as constituting the fraud charged." (internal quotation marks omitted)).

M&W also states that Zurich has not provided the requisite notice for rescinding an insurance policy under Insurance Act 2015, Schedule 1, Part 2 Variations, para. 8. *See* Dkt. 57 at 13. But this argument is raised in two sentences, without any reference to case law or other legal authority about the type of notice required or whether notice is a pleading requirement. So the Court takes no position on the argument here. M&W may raise the argument again in any motion for summary judgment.

Finally, in its reply brief, M&W states that it would face prejudice based on "the increased expense of having to rebut Zurich's amorphous 'fraud' allegations" and Zurich's delay in raising these allegations. Dkt. 61 at 4–5. The Second Circuit has explained that "[a] factually sufficient and legally valid defense should always be allowed if timely filed even if it will prejudice the plaintiff by expanding the scope of the litigation." *GEOMC*, 918 F.3d at 98. Here, Zurich raised these affirmative defenses in its first answer. And while M&W argues that Zurich filed its answer over nine months after being served, most of this delay was the result of motion practice—namely Zurich's motion to dismiss and M&W's motion to have Zurich post a bond.

## CONCLUSION

For the reasons stated above, M&W's motion to strike is DENIED. The Clerk of Court is directed to terminate Dkt. 57.

SO ORDERED.

Dated: April 25, 2024
New York, New York

ARUN SUBRAMANIAN
United States District Judge